UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1889
(7:24-cv-00456-M-RJ)

DAVINCI COMPANY, LLC, DAVINCI AEROSPACE, LLC, and DANIEL M. SHOAF

    Defendants – Appellees

ALGERNON BUTLER, III

    Trustee – Appellee

v.

ROBERT PAUL SHARPE

    Movant – Appellant

APPELLEES' RESPONSE TO APPELLANT'S INFORMAL BRIEF

NOW COME Appellees The DaVinci Company, LLC, DaVinci Aerospace, LLC, and Daniel Shoaf, responding to Appellant Robert Sharpe's Informal Brief [DE 14], and in support of this response state as follows:

Background

This matter arises out of <u>In re Port City Contracting Services, Inc.</u>, Debtor ("PCCS"), 22-02917-5-DMW, pending in the United States Bankruptcy Court for the Eastern District of North Carolina (the "PCCS Bankruptcy Proceeding"). Appellant is the majority owner of PCCS and exercised complete control over the corporation until the filing of the PCCS Bankruptcy Proceeding.

After months of discussions, an investigation of potential claims of Appellant and PCCS against Appellees by the Chapter 7 Trustee for the PCCS Estate (the "PCCS Trustee"), and a robust and lengthy mediation that included Appellant, the PCCS Trustee and Appellees entered into the Mediated Agreement to Compromise, dated April 24, 2024, and attached hereto as Exhibit A (the "Settlement Agreement"). Pursuant to the Settlement Agreement, Appellees released all of their claims against PCCS and recharacterized a portion of their secured proof of claim as unsecured, in exchange for payment of the remainder of its secured proof of claim and the PCCS Trustee's release of all claims PCCS had against Appellees. See Settlement Agreement Paragraphs 3 - 7. After a hearing on May 23, 2024, at which Appellant was present and was heard, the Settlement Agreement was approved by the Bankruptcy Court and the Order Approving and Authorizing Compromise of Controversy (DaVinci Entities) was entered on May 30, 2024. See Bankruptcy Court DE 148 (the "Approval Order").

Appellant filed a Notice of Appeal of the Approval Order to the United States District Court for the Eastern District of North Carolina on June 4, 2024. See Bankruptcy Court DE 152 (the "Appeal"). On June 10, 2024, Appellant sought an emergency stay of proceedings. See Bankruptcy Court DE 123 in Adversary Proceeding 23-00089-5-DMW. Because that Motion was miscaptioned and to avoid any doubt, the Bankruptcy Court stated explicitly that the Approval Order was not stayed. See Bankruptcy Court DE 138 in Adversary Proceeding 23-00089-5-DMW, footnote 2.

On June 17, 2024, Appellant requested and was granted an extension of time to file his designation of the record on appeal and statement of issues as required by Rule 8009(a)(1) of the Federal Rules of Bankruptcy Procedure ("FRBP"). By order dated June 18, 2024, the Bankruptcy

Court granted the extension and ordered Appellant to file the designation and statement by July 2, 2024. See Bankruptcy Court DE 162 (the "Filing Order").

Sharpe did not make the required filing by that date. Instead, on July 2, 2024, Sharpe filed a Motion for Certification of Direct Appeal to the United States Court of Appeal for the Fourth Circuit. See Bankruptcy Court DE 182 (the "Motion for Certification"). Neither the Motion for Certification nor its entry on the Bankruptcy Court Docket makes any reference to the Notice of Appeal, the Filing Order or FRBP Rule 8009(a)(1) or to its contents being Appellant's designation of record or statement of issues with respect to the Appeal.

On July 3, 2024, the Bankruptcy Court, noting that Appellant had failed to file the designation of record and statement of issues by the extended date required by the Filing Order, recommended to the District Court *sua sponte* that the Appeal be dismissed and deferred consideration of the Motion for Certification to the District Court. See District Court DE 6 (the "Recommendation"). On July 17, 2024, Appellees responded to the Recommendation and the Motion for Certification in the District Court, explicitly pointing out how each of the four factors described in In re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992), favored dismissal. See District Court DE 9 (the "Appellees' Response"). The Recommendation was notice to Appellant from the Bankruptcy Court that he had failed to perfect the Appeal.

As required by the Settlement Agreement, on July 5, 2024, the PCCS Trustee transferred the $36,000.00 payment of Appellees' secured claim to Appellees and as part of their release of claims against PCCS, Appellees on July 15, 2024, voluntarily dismissed, with prejudice, PCCS from a North Carolina State Court action in which PCCS was a defendant. See District Court DE 9, at 4. Thus, the Settlement Agreement has been substantially performed and PCCS has received all of the benefits for which the PCCS Trustee bargained.

On July 16, 2024, two weeks after the designation of record and statement of issues were due to be filed and thirteen days after the Bankruptcy Court recommended dismissal of the Appeal for failure to make such filings, Appellant filed what he labeled a "Designation of Record." See Bankruptcy Court DE 185. While that document identified several documents and a hearing, it did not contain any statement of the issues presented by the Appeal, as required by FRBP Rule 8009(a)(1) and the Filing Order.

On July 17, 2024, Appellees filed in the Bankruptcy Court a Motion to Strike the Designation of Record primarily because it lacked a statement of issues. See Bankruptcy Court DE 190. On July 30, 2024, Appellees and the PCCS Trustee were also required to file a Motion to Extend the Time for filing their own designations because – without a statement of issues – Appellees and the PCCS Trustee could not determine whether the documents designated by Appellant were sufficient to decide the Appeal. See Bankruptcy Court DE 194. Those filings were made at a cost to Appellees and were only necessary because of Appellant's failures to follow the plain language of FRBP Rule 8009(a)(1) and the Filing Order.

Rather than correct the deficiencies noted in Appellees' Motion to Strike, Appellant filed a response in which he claimed that his Motion for Certification was actually a proper designation of record and statement of issues for this Appeal. See Bankruptcy Court DE 210. The Bankruptcy Court held a hearing on the Motion to Strike on August 15, 2024 and thereafter entered an Order Granting the Motion to Strike on August 28, 2024. See Bankruptcy Court DE 221. This was further notice to Appellant from the Bankruptcy Court that he had failed to perfect the Appeal, yet he still refused to make the proper filings.

On August 7, Appellees filed in the District Court a Motion to Dismiss the Appeal because the Appeal had become moot. See District Court DE 16 ("Appellees' Motion to Dismiss the

Appeal"). Then, on September 4, 2024, the District Court, having received the Bankruptcy Court's Recommendation, Appellees' Response, and Appellees' Motion to Dismiss the Appeal, issued to Appellant an Order to Show Cause why his Appeal should not be dismissed for failure to comply with FRBP Rule 8009(a)(1). See District Court DE 19 (the "Order to Show Cause"). This was Appellant's third notice that he had failed to perfect the Appeal, yet he still refused to make the proper filings, instead continuing to claim that the Motion for Certification was sufficient. See District Court DE 20 ("Appellant's Response to Order to Show Cause").

After receiving Appellant's Response to Order to Show Cause, in which Appellant claimed that he "timely filed [the Motion for Certification] and included [the] required information" in that document, the District Court entered its Order dismissing the Appeal. See District Court DE 22 (the "Dismissal Order"). Appellant promptly appealed that decision to this Court. See DE 1.

## Issues Presented

1. Did the District Court properly exercise its discretion in dismissing the Appeal?

Yes, the District Court properly exercised its discretion in dismissing the Appeal. In the Dismissal Order, the District Court specifically found "that Appellant was negligent in failing to file the designation of the items to be included in the record on appeal and a statement of the issues to be presented" and that despite being given notice and an opportunity to explain himself, the explanation was "inadequate." District Court DE 22, at p. 2. While the District Court did not explicitly refer to steps three and four of the Serra test, the test itself was clearly referenced. See id. Further, in Appellees' Response, Appellees listed the Serra steps and explained how all four steps favored dismissal. See District Court DE 9, at p. 4.[1] The District Court explicitly warned Appellant in the Order to Show Cause that his failure to follow the procedural rules could result

---

[1] In addition to being discussed in the Appellees' Response, the Serra test was also referenced in the Order to Show Cause as the basis for the District Court's authority to dismiss the Appeal.

in the dismissal of the Appeal and that the burden was on Appellant to demonstrate why dismissal of the Appeal was not appropriate. See District Court DE 19, at p. 2. But instead of responding to the Order to Show Cause with an explanation of how even a single one of the Serra factors actually weighed in his favor, the day after the Order to Show Cause was filed, Appellant doubled down on his assertion that the Motion for Certification complied with the Rule 8009(a)(1) and provided no other reason why dismissal was not warranted or that there were other, less drastic means of achieving his compliance. See District Court DE 20.

Further, a fair reading of the record demonstrates that dismissal was warranted because (1) Appellant continued to refuse even to acknowledge that he had not complied with FRBP Rule 8009(a)(1), despite multiple motions by Appellees and orders of the Bankruptcy Court and the District Court explaining otherwise, (2) as a result of that refusal, Appellees and other participants in the PCCS Bankruptcy Action had already suffered and would continue to suffer prejudice in the form of unnecessary expense and delay if the Appeal was not dismissed, (3) in the more than three months that passed between the filing of the Notice of Appeal and the Order dismissing the Appeal, Appellant never filed a proper statement of issues, and so extending the time to do so would clearly have been futile, and (4) the Appeal cannot practically move forward if Appellant refuses to provide a statement of issues to be presented in the Appeal. Thus, the District Court properly exercised its discretion and the Dismissal Order should be affirmed. In re SRP Corp., 45 F.3d 70, 72 -74 (4th Cir. 1995).

2. <u>Even if the District Court abused its discretion, was dismissal proper nonetheless because the Appeal is moot</u>?

Yes, even if the District Court did not properly exercise its discretion in dismissing the Appeal, dismissal was proper because the Appeal is moot. As explained in detail in Appellees'

Motion to Dismiss the Appeal (see District Court DE 16, pp. 2 - 5), the appeal of a bankruptcy order will not delay its enforcement unless a stay pending appeal has been issued. In re Charter Co., 81 B.R. 90, 94 (M.D. Fla. 1987).

Because a stay was not issued, the settling parties, in accordance with the dictates of the Order, have substantially consummated the Settlement Agreement. The Appeal should be dismissed based on the substantial completion of the settlement terms under the Doctrine of Equitable Mootness. If the Appeal is allowed, the parties cannot be returned to the position they were in prior to the Approval Order: payments have been made, claims dismissed with prejudice, releases given. These waived rights cannot be reset without material prejudice to the parties. All parties in interest, even the Appellant who is now merely a creditor with respect to PCCS, would be unduly prejudiced by any reversal or modification of the Approval Order. Appellant was entitled to seek relief from the United States District Court and to request the determination of a bond pending appeal. He elected not to take such action. His failure to act should not now be rewarded, while punishing the other interested parties, because Appellees and the PCCS Trustee properly relied on the Approval Order and consummated the court-approved Settlement Agreement.

In the case of Central States, Southeast and Southwest Areas Pension Funds Central Transport, Inc., 841 F.2d 92, 96 (4th Cir.), this Court was faced with the appeal of the order confirming a plan. The order had not been stayed. The reorganized debtor had moved forward to implement the confirmed plan. This Court ruled: "… dismissal of the appeal on mootness grounds is required when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." Id. at 96. Just like the implementation of a plan in chapter 11, the

substantial completion of the terms of a court-approved settlement that has "created, extinguished or modified rights" should mean that effective relief is no longer practically available. This Court recognized that when it comes to unwinding transactions, toothpaste simply cannot be put back in the tube.

Because bankruptcy proceedings involve many interested parties, most unrelated to each other, and numerous hearings, adversary proceedings, negotiations and settlements, all going on at the same time, and affecting both parties and non-parties and both secured and unsecured creditors, all interested parties must be able to act in reliance on the effectiveness of unstayed orders of bankruptcy courts as they make decisions. Reversal or modification of the Approval Order or the Settlement Agreement will negatively impact numerous parties; therefore, the Dismissal Order should be affirmed.

Prayer for Relief

WHEREFORE, for the reasons set forth above, Appellees respectfully request that the Court affirm the Dismissal Order.

This the 3rd day of October, 2024.

>   */s/ Charles M. Ivey, III*
>   Charles M. Ivey, III/NCSB# 8333
>   Attorney for Appellees DaVinci Company, LLC and
>   DaVinci Aerospace, LLC
>   Ivey, McClellan, Siegmund, Brumbaugh & McDonough
>   100 South Elm Street, Suite 500
>   Greensboro, NC 27401
>   Telephone: 336-274-4658
>   Email: cmi@iveymcclellan.com

*/s/ Elizabeth C. Taylor*
Elizabeth C. Taylor/ NCSB# 27971
Attorney for Appellee Daniel Shoaf
5008 E Oak Island Drive
Suite 2, Box 135
Oak Island, NC 28465
Telephone: 336-207-1182
Email: elizabeth@ectaylorlaw.com

# MEDIATED AGREEMENT TO COMPROMISE

**THIS MEDIATED AGREEMENT TO COMPROMISE** ("Agreement") is made and entered effective this the 24th day of April, 2024, by and among Algernon Butler, III ("PCCS Trustee"), and The DaVinci Company, LLC and DaVinci Aerospace, LLC (together, the "DaVinci Parties"), and Daniel M. Shoaf ("Shoaf"). The Trustee, the DaVinci Parties, and Shoaf are referred to herein as the "Parties."

**WHEREAS,** the Parties are participants in a court-ordered mediation with respect to various actions, claims and counterclaims related to the Chapter 7 bankruptcy case known as *In re: Port City Contracting Services, Inc.*, filed December 16, 2022 ("PCCS Petition Date") in the Bankruptcy Court for the Eastern District of North Carolina ("Court"), Case No. 22-02917-5-DMW ("PCCS Bankruptcy Case"); and

**WHEREAS,** in addition to the Bankruptcy Case, Robert Paul Sharpe ("Sharpe"), the majority shareholder of Port City Contracting Services, Inc. ("PCCS"), filed a voluntary petition for bankruptcy protection under Chapter 13 with the Court on March 3, 2023 ("Sharpe Petition Date"), such proceeding known as *In re: Robert Paul Sharpe*, Case No. 23-00607-5-DMW ("Sharpe Bankruptcy Case"), which bankruptcy case was dismissed at the request of Sharpe and by order of the Court entered on January 5, 2024 [Sharpe DE 129]; and

**WHEREAS,** prior to the PCCS Petition Date there was litigation pending in the Superior Court for Guilford County, North Carolina captioned <u>The DaVinci Company, LLC and DaVinci Aerospace, LLC v. Port City Contracting Services, Inc. and Robert P. Sharpe</u>, Case No. 22 CVS 2828, ("Guilford County Action") in which funds constituting property of PCCS in the approximate gross amount of $74,902.37 were paid to the Clerk of Superior Court for Guilford County, and which funds in the approximate net amount of $73,017.31 (after deduction of certain costs and expenses) were subsequently paid by that Clerk to the Trustee to be held pending future orders of the Court ("Guilford Action Funds"); and

**WHEREAS,** DaVinci Aerospace, LLC filed in the PCCS Bankruptcy Case a proof of claim in the amount of $122,394.55, being Proof of Claim # 6 ("DaVinci Proof of Claim"); and

**WHEREAS,** on July 25, 2023, the Court entered in both the PCCS Bankruptcy Case and the Sharpe Bankruptcy Case a Consent Order on Trustees' Joint Application to Employ Special Counsel [PCCS DE 79; Sharpe DE 79], which Consent Order was signed by both the Trustee and Sharpe, among others, and which is attached hereto as Exhibit A ("Consent Order"); and

**WHEREAS,** Paragraph 2 of the Consent Order provides that the scope of the employment of Special Counsel includes, <u>inter alia</u>: (a) To investigate PCCS's and/or Sharpe's potential claims against third parties (including Eastham, Spark, and/or DaVinci Aerospace, LLC); (b) To make demands and to file and prosecute litigation of any of those claims if agreed to by both special counsel and the Trustee(s) of the bankruptcy estate(s) holding such claims; (c) If such litigation is brought, to defend any claims of the adverse third parties against the bankruptcy estate(s) of PCCS and/or Sharpe that might be asserted as a counterclaim or offset against the claims of the bankruptcy estate(s); and (d) Any other services directly related to the foregoing.

**WHEREAS,** Paragraph 6.f. of the Consent Order provides in pertinent part that: "The Trustees shall have sole authority to direct any litigation within the scope of the employment of Special Counsel and, if applicable, any settlement thereof, subject to any necessary court approval"; and

**WHEREAS**, Paragraph 6.i. of the Consent Order provides that: "Sharpe shall irrevocably withdraw his claim of exemption in any litigation related to PCCS or personal claims Sharpe may have against third parties (including Eastham, Spark, and/or DaVinci Aerospace, LLC)"; and

**WHEREAS**, Paragraph 6.k. of the Consent Order provides in pertinent part that: "In the event Sharpe's individual bankruptcy case is dismissed, his signature below shall constitute his assignment of his individual interest in any claims and/or litigation within the scope of special counsel's representation to the PCCS Estate"; and

**WHEREAS**, at the time the Consent Order was entered, the investigation to identify potential claims against third parties, if any, which investigation where deemed appropriate might lead to the Trustee's filing and prosecution of litigation of any of those claims, was ongoing and not complete, and the DaVinci Parties continue to deny that any claim in law or equity of any type exists in favor of Trustee or Sharpe as against the DaVinci Parties; and

**WHEREAS**, in accordance with the above referenced Consent Order, 11 U.S.C. §§ 541, 704 and other applicable sections of the U.S. Bankruptcy Code and Bankruptcy Rules of Procedure, the Trustee, with Court approval, has the authority to agree, enter into and consummate this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

1. <u>Bankruptcy Court Approval</u>. The Trustee's obligations under this Agreement are subject to the approval of the Bankruptcy Court. However, except for that approval, this document shall serve as an agreement between and be binding upon the Parties hereto prior to the entry by the Bankruptcy Court of an order approving these terms. After the full execution of this Agreement, the Trustee shall file a motion pursuant to Bankruptcy Rule 9019 seeking an order of the Bankruptcy Court approving this Agreement ("Approval Order").

2. <u>Effective Date</u>. The "Effective Date" shall be the first date on which each of the following has occurred: (a) this Agreement has been fully executed by all Parties, (b) the Approval Order has either (i) become a final order not subject to appeal, or (ii) if any appeal is timely taken from the Approval Order the Bankruptcy Court or the applicable district or other appellate court having jurisdiction over the appeal has entered an order ruling that the Approval Order is not subject to stay pending appeal.

3. <u>DaVinci Claim</u>. As of the Effective Date, the DaVinci Proof of Claim shall be allowed as a properly perfected secured claim of $36,000 which shall be secured by the Guilford Action Funds in that amount, which amount shall be paid to DaVinci Aerospace, LLC within 10 days of the Effective Date of this Agreement. The remaining balance of the DaVinci Proof of Claim in the unsecured amount of $86,394.55 shall be subordinated to all other claims in the PCCS Bankruptcy Case, except that it shall receive payment prior to any distribution pursuant to § 726(a)(6) made to the debtor or its shareholders on account of their equity interests.

4. <u>Trustee Release</u>. Effective on the Effective Date, Trustee, in the exercise of his power under the Bankruptcy Code and Rules and the Consent Order, hereby settles, releases, waives and forever discharges the DaVinci Parties and their respective officers, directors, members, employees, agents and representatives, including the controlling member of each of the DaVinci Parties, Daniel M.

Shoaf, both in their individual and representative capacities, from all claims, causes of actions, suits, debts, obligations, liabilities, demands, losses, costs and expenses (including attorney's fees), whether asserted or unasserted, whether known or unknown, arising on or before the PCCS Petition Date with respect to claims of PCCS, and arising on or before the Sharpe Petition Date with respect to any claims of Sharpe assigned to Trustee under the Consent Order ("Trustee's Settlement and Release"); provided, however, that this Trustee's Settlement and Release shall not be construed as a settlement, release, waiver or discharge of Mark Eastham or Peter Spark in their individual capacities, even if Mark Eastham or Peter Spark were, are, or in the future become an officer, director, member, employee, agent or representative of the DaVinci Parties; and provided, further, but not in limitation of this release the Trustee makes no representation or warranty with respect to the specific claims that may or may not be included within the Trustee's Settlement and Release.

5. DaVinci and Shoaf Release. Except for the balance of the DaVinci Proof of Claim in the unsecured and subordinated amount of $86,394.55, the DaVinci Parties and Daniel M. Shoaf hereby settle, release, waive and forever discharge the PCCS Estate and the Trustee from all claims, causes of actions, suits, debts, obligations, liabilities, demands, losses, costs and expenses (including attorney's fees) of any kind, whether asserted or unasserted, whether known or unknown, arising on or before the PCCS Petition Date.

6. Dismissal of Guilford County Action. Within 30 days after the Effective Date, the DaVinci Parties shall file a voluntary dismissal with prejudice of the Guilford County Action as to PCCS.

7. Trustee's Investigation. Trustee shall conduct a reasonable investigation into the records and financial affairs of PCCS and any related firms and individuals to the extent deemed appropriate by the Trustee, and the DaVinci Parties shall assist the Trustee, at the Trustee's request and at no charge to the Trustee or the PCCS Estate, in the analysis of such records. Any and all information furnished to the DaVinci Parties shall be subject to a non-disclosure and confidentiality agreement providing that such information will not be disclosed, released or used by the DaVinci Parties or Shoaf for any purposes other than to assist the Trustee, without the express written consent of the Trustee.

8. Entire Agreement. Subject to the terms of the Approval Order, this Agreement contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other representations, covenants, undertakings or other prior or contemporaneous agreements, oral or written, respecting such matters, shall be deemed in any way to exist or bind any of the Parties hereto. The Parties hereto acknowledge that this Agreement has not been executed in reliance on a promise, representation or warranty not expressly contained in this Agreement. This Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties.

9. Counterparts and Facsimiles. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original Agreement, and all of which shall constitute one agreement. Any signature to this Agreement provided via electronic transmission of any type shall be deemed by the Parties to constitute an original signature.

10. Jurisdiction. The Parties agree that the Court shall have and retain jurisdiction over the Parties and over the subject matter of this Agreement and to hear and determine any matters or disputes arising from or related to this Agreement and to enforce the terms hereof, and the Parties acknowledge and consent to such jurisdiction.

**IN WITNESS WHEREOF**, each of the parties has executed or caused to be executed by its duly authorized representatives, this Agreement effective as of the date first set forth above.

CHAPTER 7 TRUSTEE FOR PCCS

Dated: May 8, 2024

_/s/ Al Butler III, Ch. 7 Trustee_
ALGERNON L. BUTLER III, TRUSTEE

THE DAVINCI COMPANY, LLC

Dated: May 8, 2024

By: Daniel M Shoaf
Its: CEO

DAVINCI AEROSPACE, LLC

Dated: May 8, 2024

By: Daniel M Shoaf
Its: CEO

Dated: May 8, 2024

_/s/ Daniel M. Shoaf_
DANIEL M. SHOAF

CERTIFICATE OF SERVICE

      THIS IS TO CERTIFY that copies of the foregoing were duly served upon the following addressees by depositing the same in postage-paid wrappers, properly addressed to the following parties in interest at their last known address as shown, in an official depository of the United States Postal Service.

    Algernon L. Butler, III
    Chapter 7 Trustee Port City
    Trustee- Appellee
    Butler & Butler
    111 North Fifth Avenue
    Wilmington, NC 28401

    Robert Paul Sharpe
    245 Royal Fern Road
    Wilmington NC 28412

This the 3rd day of October, 2024.

                              */s/ Charles M. Ivey, III*
                              Charles M. Ivey, III/NCSB# 8333
                              Attorney for Appellees DaVinci Company, LLC and
                              DaVinci Aerospace, LLC
                              Ivey, McClellan, Siegmund, Brumbaugh & McDonough
                              100 South Elm Street, Suite 500
                              Greensboro, NC 27401
                              Telephone: 336-274-4658
                              Email: cmi@iveymcclellan.com